No. 7:23-cv-04185

---

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

In re JUSTO REYES, Debtor.

---

LINDA TIRELLI, Appellant,

v.

WILLIAM K. HARRINGTON, United States Trustee, and THOMAS C. FROST, Chapter 13 Trustee, Appellees.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUHERN DISTRICT OF NEW YORK

---

## BRIEF OF APPELLEE WILLIAM K. HARRINGTON, UNITED STATES TRUSTEE

---

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
Trial Attorney

Department of Justice
Executive Office for
 United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.: (202) 307-1399
Fac.: (202) 307-2397
frederick.g.hall@usdoj.gov

WILLIAM K. HARRINGTON
United States Trustee for Region 2
LINDA A. RIFFKIN
Assistant United States Trustee
MARK E. BRUH
ANDREW D. VELEZ-RIVERA
Trial Attorneys

Department of Justice
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Suite 534
New York, NY 10004
Tel.: (212) 510-0500
Fac.: (212) 668-2361
mark.bruh@usdoj.gov
andy.velez-rivera@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT OF APPELLATE JURISDICTION ...................................... 1

STATEMENT OF THE ISSUES .............................................................. 2

STANDARD OF REVIEW ...................................................................... 2

STATEMENT OF THE CASE ................................................................. 3

   I.   Statutory Framework ................................................................. 3

      A.   Chapter 13 repayment plans ........................................... 3

      B.   The United States Trustee ................................................ 4

   II.   Statement of the Facts ............................................................. 4

      A.   Ms. Tirelli's clients' chapter 13 repayment plans provide that disputed debt payments will be held back or held in escrow. ................................... 4

      B.   The bankruptcy court issues the Order to Show Cause .......................... 12

      C.   After her resistance to providing the required information fails, Ms. Tirelli reveals a long-term shortfall in her escrow account. ................................... 17

      D.   The court unseals the briefs, refers Ms. Tirelli to this Court's Committee on Grievances, and directs Ms. Tirelli temporarily to provide its order to the bankruptcy judges she appears before. ................................... 19

SUMMARY OF THE ARGUMENT ......................................................... 24

ARGUMENT ........................................................................................ 27

   I.   Ms. Tirelli Breached Her Duty of Candor to the Bankruptcy Court by Omitting That the Escrow Requirements in Her Clients' Plans Were Not Followed. ................................... 27

   II.   The Bankruptcy Court Properly Unsealed the Parties' Briefs. .......................... 32

   III.   The Bankruptcy Court Did Not Abuse Its Discretion by Requiring Ms. Tirelli, as Temporary Measure, To Provide Its Opinion to Other Courts. .......................... 37

CONCLUSION ..................................................................................... 39

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re 461 7th Avenue Mkt., Inc.,*
623 B.R. 681 (S.D.N.Y. 2020) .................................................................................. 2

*Ad Hoc Comm. of Pers. Injury Asbestos Claimants v. Dana Corp. (In re Dana Corp.),*
412 B.R. 53 (S.D.N.Y. 2008) .................................................................................. 3

*Adams v. Zarnel (In re Zarnel),*
619 F.3d 156 (2d Cir. 2010) .................................................................................. 4

*Air Line Pilots Ass'n, Int'l v. American Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.),*
156 B.R. 414 (S.D.N.Y. 1993) .............................................................................. 32

*Bullard v. Blue Hills Bank,*
575 U.S. 496 (2015) .............................................................................................. 1

*In re Chopak,*
160 F.2d 886 (2d Cir. 1947) .............................................................................. 2, 37

*In re Demetriades,*
58 F.4th 37 (2d Cir. 2023) ..................................................................................... 2

*First City Nat'l Bank & Trust Co. v. FDIC,*
730 F. Supp. 501 (E.D.N.Y. 1990) ...................................................................... 34

*In re Food Mgmt. Grp., LLC,*
359 B.R. 543 (Bankr. S.D.N.Y. 2007) .............................................................. 34, 35

*Goldstein v. St. Luke's-Roosevelt Hosp. Ctr. (In re Goldstein),*
430 F.3d 106 (2d Cir. 2005) (per curiam) ............................................................. 1

*Google LLC v. Starovikov,*
No. 21cv10260 (DLC), 2022 WL 16948296 (S.D.N.Y. Nov. 15, 2022) ................. 27

*Lugosch v. Pyramid Co. of Onondaga,*
435 F.3d 110 (2d Cir. 2010) ................................................................................ 36

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.,*
    994 F. Supp. 447 (S.D.N.Y. 1997), *aff'd,* 138 F.3d 33 (2d Cir. 1998) ....................... 38

*Neal v. Kansas City Star (In re Neal),*
    461 F.3d 1048 (8th Cir. 2006) ................................................................. 35

*In re Nortel Networks Corp. Secs. Litig.,*
    539 F.3d 129 (2d Cir. 2008) (per curiam) .................................................. 33

*Park Nat'l Bank of Houston v. Kaminetzky,*
    976 F. Supp. 571 (S.D. Tex. 1996) ........................................................... 38

*Randy Int'l, Ltd. v. Automatic Compactor Corp.,*
    412 N.Y.S.2d 995 (Civ. Ct. 1979) ............................................................ 30

*In re Reyes,*
    651 B.R. 99 (Bankr. S.D.N.Y. 2023) ........................................................ 37

*Robbins v. Tripp,*
    510 B.R. 61 (E.D. Va. 2014) .................................................................... 36

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.,*
    328 F.R.D. 100 (S.D.N.Y. 2018) .............................................................. 27

*Togut v. Deutsche Bank AG, Cayman Islands Branch (In re Anthracite Capital, Inc.),*
    492 B.R. 162 (Bankr. S.D.N.Y. 2013) ...................................................... 34

*Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.),*
    21 F.3d 24 (2d Cir. 1994) ........................................................................ 32

**Statutes**

11 U.S.C.
§ 107 .................................................................................................*passim*
§ 107(a) ........................................................................................... 32
§ 107(b) ........................................................................................... 35
§ 107(b)(1) ...................................................................................... 36
§ 107(b)(2) ................................................................ 20, 33, 34, 35
§ 307 .................................................................................................. 4
§§ 1301 − 1330 ................................................................................ 3
§ 1302 ............................................................................................... 3
§ 1323 ........................................................................................... 3, 30
§ 1325 ............................................................................................. 21
§ 1325(b) .......................................................................................... 3
§ 1326(a)(1) ..................................................................................... 3
§ 1326(a)(1)(C) ............................................................................... 3
§ 1329 ........................................................................................... 3, 30

28 U.S.C.
§ 157(a) ............................................................................................ 1
§ 157(b) ............................................................................................ 1
§ 158(a)(1) ....................................................................................... 1
§ 158(c)(2) ........................................................................................ 1
§§ 581 − 589 ................................................................................... 4
§ 1334(a) ........................................................................................... 1

**Other Authorities**

*Collier on Bankruptcy* ¶ 107.03[1][b] (Richard Levin & Henry J. Sommer
eds., 16th ed.)................................................................................ 35

Conn. Rules of Prof'l Conduct
R. 1.15(b)......................................................................................... 20
R. 1.15(j)(9)..................................................................................... 20
R. 8.4(3)............................................................................................ 27
R. 8.4(4)............................................................................................ 27

Fed. R. Bankr. P. 8002 ................................................................... 1

Fed. R. Civ. P. 12(f) ...................................................................... 34

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 ................................ 4

Local Civil Rules
    1.3(a)(6)(F) ................................................................................... 27
    1.3(a)(7) ....................................................................................... 27

N.Y. Rules of Prof'l Conduct
    R. 1.15(a) ..................................................................................... 20
    R. 1.15(b) ..................................................................................... 20
    R. 8.4(c) ....................................................................................... 27
    R. 8.4(d) ....................................................................................... 27

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges.

The bankruptcy court had jurisdiction over the debtors' chapter 13 bankruptcy cases under 28 U.S.C. §§ 157(a) and (b), and 1334(a).  The bankruptcy court's final order resolving the order to show cause why discipline should not be imposed upon debtor's counsel, Linda Tirelli, was entered on April 28, 2023. *See, e.g.*, *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (providing that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case"); *Goldstein v. St. Luke's-Roosevelt Hosp. Ctr. (In re Goldstein)*, 430 F.3d 106, 111 (2d Cir. 2005) (per curiam) (holding that an order referring an attorney to a disciplinary committee based on specific findings of misconduct as part of a judgment closing a case is a final, appealable order); App.[1] at A329 – A391.

Ms. Tirelli timely filed a notice of appeal under 28 U.S.C. § 158(c)(2) and Federal Rule of Bankruptcy Procedure 8002 on May 11, 2023.  App. at A486 – A489.

---

[1] Citations to "App. at A___" are to the Appendix of Appellee William K. Harrington, United States Trustee, filed contemporaneously with this brief.

## STATEMENT OF THE ISSUES

I.      Did the bankruptcy court correctly conclude Ms. Tirelli violated her duty of candor to the court regarding debt payments required by her clients' chapter 13 plans to be held in escrow?

II.     Did the bankruptcy court abuse its discretion in requiring—as a temporary measure until this Court's Committee on Grievances' process concludes—that Ms. Tirelli provide a copy of the court's order to any judge presiding over a case where Ms. Tirelli is acting as counsel to a bankruptcy debtor?

III.    Did the bankruptcy court properly unseal the proceedings under 11 U.S.C. § 107?

## STANDARD OF REVIEW

This Court reviews the bankruptcy court's "disciplinary order for abuse of discretion, while reviewing de novo whether the conduct in question was within the scope of the disciplinary rules in question." *In re Demetriades*, 58 F.4th 37, 45 (2d Cir. 2023) (on appeal from the E.D.N.Y. Committee on Grievances).  The bankruptcy court's choice of remedy for attorney misconduct is reviewed for abuse of discretion. *In re Chopak*, 160 F.2d 886, 887 (2d Cir. 1947).  "A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings, or commits a clear error of judgment . . . based on all the appropriate factors." *In re 461 7th Avenue Mkt., Inc.*, 623 B.R. 681, 691-92 (S.D.N.Y. 2020) (alteration in original).

2

As for unsealing material under 11 U.S.C. § 107, this Court reviews the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *See Ad Hoc Comm. of Pers. Injury Asbestos Claimants v. Dana Corp. (In re Dana Corp.)*, 412 B.R. 53, 56-58 (S.D.N.Y. 2008).

## STATEMENT OF THE CASE

### I.   Statutory Framework

### A.   Chapter 13 repayment plans

Chapter 13 of the Bankruptcy Code permits an individual debtor with regular income to obtain a discharge of his debts if he pays creditors in accordance with a court-confirmed plan.  *See* 11 U.S.C. §§ 1301 – 1330. A private trustee—in this case, co-appellee Thomas C. Frost—is appointed by the United States Trustee to oversee chapter 13 debtors' performance under the confirmed plan.  *See id.* § 1302.

"Unless the court orders otherwise," a chapter 13 debtor must begin making payments directly to the chapter 13 trustee or to a lessor or secured creditor no later than 30 days after he files his proposed plan.  *Id.* § 1326(a)(1).  Generally, chapter 13 debtors make "adequate protection" payments to their mortgagees and other secured creditors to provide protection for the creditors' collateral, which may be depreciating. *See*, *e.g.*, *id.* § 1326(a)(1)(C).  Their otherwise "disposable income" is used to pay their non-priority unsecured creditors.  *See id.* § 1325(b).  A plan may also be amended before or after confirmation to account for new information and changed circumstances.  *See id.* §§ 1323 & 1329.

3

## B.    The United States Trustee

The United States Trustee is a Department of Justice official appointed by the Attorney General to supervise the administration of bankruptcy cases. *See generally* 28 U.S.C. §§ 581 – 589.  United States Trustees "are responsible for protecting the public interest and ensuring that bankruptcy cases are conducted according to law." *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 162 (2d Cir. 2010); *see also* H.R. Rep. No. 95-595, at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049 (stating that United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena").  To this end, Congress has provided that the United States Trustee "may raise and may appear and be heard on any issue in any case or proceeding" under title 11, 11 U.S.C. § 307, and has standing under section 307 to appear and be heard on any issue in any bankruptcy case, despite the lack of pecuniary interest in the outcome.  *Zarnel*, 619 F.3d at 161-62.

## II.    Statement of the Facts

### A.    Ms. Tirelli's clients' chapter 13 repayment plans provide that disputed debt payments will be held back or held in escrow.

Ms. Tirelli is a consumer bankruptcy lawyer licensed to practice in Connecticut and admitted to practice before this Court.  App. at A371.  She has represented numerous debtors seeking chapter 13 relief in the Bankruptcy Court for the Southern District of New York.

In at least 16 of those cases, Ms. Tirelli's clients' chapter 13 plans stated that, for mortgage payments where the validity of the debt was disputed, payments would not be made to the chapter 13 trustee or the mortgagee until the validity of the debt was decided.  As noted above, *supra* at 3, this is a deviation from the ordinary rule in chapter 13 cases that debtors pay the chapter 13 trustee or their lenders directly within 30 days of filing their plans.  This non-standard provision appeared in the plans drafted by Ms. Tirelli in several variations, but they can be divided into two groups.  Three plans stated that payments would be "held aside."  *E.g.*, App. at A333 n.3 (plan for Justo Reyes, No. 16-22556).  Thirteen plans stated that payments would be "held in escrow with" Ms. Tirelli or her firm.  *E.g.*, App. at A334 n.3 (plan for David Daniel and Vivian Naomi Akerib, No. 19-22276); *see also infra* at 14-16.[2]  By their terms, if the validity of the mortgage were confirmed, the secured lender would receive all the payments held back or held in escrow.

In May 2019, a new judge assumed the bankruptcy court's chapter 13 cases and expressed concerns about holding back disputed payments from the chapter 13 trustee and the mortgagee.  App. at A335.  However, because the holdbacks were proposed while the cases were before the previous presiding judge, the court allowed them to continue.  App. at A335.

---

[2] In all but one case at issue, Ms. Tirelli was the lead bankruptcy counsel and signed the pleading.  For the one case she was not lead counsel and did not sign the pleading, she appeared as the debtor's litigation counsel, and the chapter 13 plan said mortgage payments would be held in escrow with her firm.  App. at A380 n.34.

Nonetheless, as shown below, the bankruptcy court and other parties repeatedly inquired of Ms. Tirelli and her associates about the status of holdbacks and escrows in cases where they were part of the chapter 13 plans.

###    1.    *In re Jackson*, No. 16-23514 (Bankr. S.D.N.Y.)

Ms. Jackson's chapter 13 plan stated that mortgage payments would be "held aside in escrow" until the validity of her mortgage was determined.  App. at A333 n.3.

At a May 8, 2019, hearing, the court asked this, after hearing Ms. Tirelli describe a dispute with Ms. Jackson's loan servicer: "let me ask whether there have been post-petition payments made on this property."  App. at A600.  Ms. Tirelli responded, "No, Your Honor, that money would be set aside."  App. at A600.  The court stated, "I thought I had seen something saying that the[ post-petition payments] were going to be put in escrow.  And if so, I was going to ask you, how much was in escrow."  App. at A600.  Ms. Tirelli said, "I just don't have an answer right now, today, Your Honor, because I wasn't here for that."  App. at A601.  The court stated that "we'll talk about post-petition payments" again.  App. at A602.

At a January 20, 2021, hearing, after an inquiry from the chapter 13 trustee[3] regarding "are there any funds being held in escrow, now that loss mitigation has been

---

[3] As set forth above, *see supra* at 3, Thomas C. Frost is the current standing trustee for chapter 13 cases filed in this District.  At the time of the Order to Show Cause proceedings, Krista Preuss was the standing trustee.  *See* ECF No. 11.

pending close to four years," Ms. Tirelli's associate did not address the concern.  App. at A614.

At a March 17, 2021, hearing, the chapter 13 trustee again inquired, "I just want to know from the secured creditor if any payments have been coming to them, or if the debtor's counsel is holding any funds in escrow?"  App. at A595.  After counsel for the secured creditor stated she had not been advised that Ms. Jackson was paying the secured creditor directly, Ms. Tirelli's associate said, "I did not have this on my list to check with Ms. Tirelli regarding her escrow, but I certainly will have that information for counsel."  App. at A595.

At a June 2, 2021, hearing, Ms. Tirelli finally stated that "my client is making adequate protection payments" directly to the secured creditor, although she did not say for how long Ms. Jackson had been making those payments.[4]  App. at A608.

### 2.    *In re Akerib*, No. 19-22276 (Bankr. S.D.N.Y.)

The Akeribs' chapter 13 plan stated that "[p]ost petition monthly payments . . . shall be held in escrow with the Debtors' attorney" until the validity of their mortgage was determined.  App. at A334 n.3.

---

[4] Ms. Tirelli's brief asserts (at 13) without evidentiary support that Ms. Jackson paid the secured creditor directly for two years.  If this is true, and the United States Trustee does not know one way or the other, this would mean Ms. Jackson was *not* directly paying her secured creditor for three years of her bankruptcy, in which case her plan required her to hold back her mortgage payments.

7

At an August 28, 2019, hearing, the secured creditor asked about "the practice of holding monies in escrow for post-petition payments." App. at A689. Ms. Tirelli stated, "[T]he money is safe. It is in escrow. I can certainly give the trustee an accounting." App. at A690.

At a June 2, 2021, hearing, a creditor asserted that the debtors should have paid $64,800 over the twenty-seven months the case had been pending. App. at A294. Ms. Tirelli's associate stated that "[t]he debtor[s] did not provide us with any funds that we held in escrow" and instead had made "two of the three payments" under a trial loan modification plan with their mortgage holder. App. at A294.

It was later determined the Akeribs had paid into Ms. Tirelli's escrow, and at the time relevant to this appeal Ms. Tirelli should have still held $7,200 in escrow.

### 3.  *In re Kolkowski*, No. 19-22172 (Bankr. S.D.N.Y.)

Mr. Kolkowski's chapter 13 plan stated that "[p]ost petition monthly payments . . . shall be held in escrow with the Debtor's attorney" until the validity of his mortgage was determined. App. at A334 n.3.

At an August 19, 2020, hearing, after the secured creditor noted that "fifteen post-petition payments, totaling over 110,000 dollars" had not been made to the secured creditor, Ms. Tirelli stated that the chapter 13 plan "says that that money is being deposited into my escrow account" and "I can affirm for the Court that my client has, in fact, deposited the money into the escrow account." App. at A673 – A675. When the court directed that the moneys be paid to the secured creditor, Ms.

Tirelli stated, "That's why it was set aside and earmarked for that purpose."  App. at A677.

Subsequent proceedings confirmed that Mr. Kolkowski paid monies to Ms. Tirelli to be held in escrow and that at the time relevant to this appeal Ms. Tirelli had already paid them to the secured creditor.

### 4.    *In re Faupel*, No. 19-22007 (Bankr. S.D.N.Y.)

Ms. Faupel's chapter 13 plan stated that "[p]ost petition mortgage payments alleged by disputed creditor . . . to be held in escrow with Tirelli Law Group LLC" until the validity of her mortgage was determined.  App. at A334 n.3.

In a February 3, 2021, hearing, the chapter 13 trustee stated, "this is another one of these cases where the -- counsel for the debtor had escrow funds that they were holding that were supposed to be turned over to my office, and I still haven't received them."  App. at A245.  Due to Ms. Tirelli's absence on medical leave, the issue was tabled to the next hearing.  App. at A245 – A246.

At the next hearing on March 17, 2021, the chapter 13 trustee noted there should be $94,500 in Ms. Tirelli's escrow account.  App. at A270 – A271.  Ms. Tirelli's associate disclosed that "the debtor never did turn over any funds to be held in escrow."  App. at A272.  Her associate stated that Ms. Tirelli "did go through her escrow account" at the time.  App. at A272.  The court stated that the secured creditor could request adequate protection and noted, "so there was no pile of money that needs to be accounted for, but rather, there just hasn't been any payments for ten

years [8 years pre-petition, and 2 years post-petition].  And so I guess that's where we are."  App. at A272 – A273.

At a June 2, 2021, hearing, Ms. Tirelli's associate repeated that Ms. Tirelli had not received any escrow payments.  App. at A320.  After the chapter 13 trustee noted that the chapter 13 plan provided that debtor's counsel would hold the payments in escrow, the court stated, "I have grown increasingly concerned that there is basically a -- an intent to never pay post-petition payments by some counsel because this keeps coming up, and I'm going to start issuing orders to show cause why people shouldn't be held in contempt for not complying with language that's in their own plans."  App. at A320 – A321.  The court observed that Ms. Tirelli's firm was "the only people, as counsel, who can actually tell us whether this is happening and no one ever comes to me to say the[ debtors] aren't making these payments."  App. at A322.

Subsequent proceedings confirmed that Ms. Faupel never made any escrow payments required by the plan.

### 5.  *In re Gizzo*, No. 19-22051 (Bankr. S.D.N.Y.)

Mr. Gizzo's chapter 13 plan stated that "[p]ost petition monthly payments . . . shall be held in escrow with the Debtor's attorney" until the validity of his mortgage was determined.  App. at A334 n.3.

At a March 11, 2020, hearing, the chapter 13 trustee noted that Mr. Gizzo's schedules suggested he was paying $5,000 each month for mortgage payments and asked if "this [is] one of those situations where there's money being held in escrow."

10

App. at A660.  Ms. Tirelli stated, "I'm not holding money in escrow, Your Honor.  I'd have to check with my client to see if the money is being set aside."  App. at A660.

At a September 23, 2020, hearing, counsel for the secured lender noted that "this is a plan where Debtor's counsel is holding funds of alleged adequate protection payments," and that those post-petition payments to that time should have amounted to "approximately $63,000."  App. at A654.  The chapter 13 trustee noted that "if it's not being paid to the mortgage company, it's disposable income and property of the estate."  App. at A654.  Ms. Tirelli said,

> [M]y understanding is -- and this is the first time I'm having this discussion.  My understanding is that my client, since we're in loss mitigation, was paying the adequate protection, so I was not aware that this money was not going to the creditor until right now.  So I do have to speak to my client and find out did he pay it, you know, does he have a record of that.  And if he doesn't have a record of it, then where is the money?  I have the same question the trustee has right now, and that the creditor has.  I don't know where it is, so I can't say that he didn't pay or that he did pay because this is the first I'm hearing of it. . . .  He's supposed to pay.  I don't know why he's not.

App. at A655 – A656.  The court responded, "So that is something that needs to be looked at," and that "[t]here was an understanding it was being paid, and it sounds like it isn't.  And this case has been here for more than a year and a half, so that's a significant issue that we need to address promptly."  App. at A656.

At a March 3, 2021, hearing, the chapter 13 trustee again raised the issue of post-petition payments.  App. at A649.  Neither Ms. Tirelli's associate nor the secured creditor could answer the chapter 13 trustee's question.  App. at A649 – A650.

At a June 2, 2021, hearing—which occurred shortly after the hearing in *Faupel* described above—the chapter 13 trustee noted that Ms. Tirelli should be holding $126,000 in post-petition mortgage payments under the terms of the plan.  App. at A641.  Ms. Tirelli's associate stated that Ms. Tirelli was not holding any funds in escrow.  App. at A641.  The court decided to schedule a hearing "to just address these cases where the plan says one thing but there's no money."  App. at A641.

Subsequent proceedings confirmed that Mr. Gizzo never made any of the escrow payments required by the plan.

### B.    The bankruptcy court issues the Order to Show Cause.

On June 17, 2021, the bankruptcy court issued an Order to Show Cause in 17 cases in which the court understood the chapter 13 plan to contain a hold-back or escrow provision.  App. at A027 – A033.  The Order to Show Cause directed Ms. Tirelli to show cause as to:

(i)   whether misrepresentations were made by Ms. Tirelli—or other counsel on her behalf—regarding the escrowing of postpetition mortgage payments and, if so, why Ms. Tirelli should not be sanctioned for such misrepresentations,

(ii)  whether all postpetition mortgage payments purportedly held in escrow by Ms. Tirelli in the [identified] cases should not be immediately turned over to the applicable secured creditors or the Chapter 13 Trustee, [and]

(iii) why the Chapter 13 Plans in each of the [identified] cases—and any other cases where Ms. Tirelli is counsel and the plans provide for the escrow of postpetition mortgage payments—should not be immediately amended to require that all postpetition mortgage payments be paid either directly to the secured creditors or paid to the Chapter 13 Trustee as conduit payments to the secured creditors.

12

App. at A031 – A032.  The Order to Show Cause further directed Ms. Tirelli to file a

declaration providing:

1) a calculation of the amount of funds that are being held in escrow for postpetition mortgage payments in each of the [identified] cases and any other cases where Ms. Tirelli has represented to the Court that she (or her law firm) is holding such funds;

2) an accounting of how the funds actually held in escrow by Ms. Tirelli (or her law firm) compares with the amount that should be in escrow given the length of time that these bankruptcy cases have been pending, and

3) to the extent that the funds actually held in escrow do not match the amount that should have been in escrow based on representations made to the Court, an explanation as to why such a circumstance does not constitute sanctionable conduct.

App. at A032 – A033.  The Order to Show Cause set a hearing date of August 4,

2021.  App. at A031.  The United States Trustee was invited to participate.  App. at

A032.

On June 30, 2021, the court granted Ms. Tirelli an extension to respond to the

Order to Show Cause.  App. at A034 – A037.  However, the court required her to

(1) within two weeks amend the applicable plan to replace the language regarding

post-petition escrow payments in each chapter 13 plan with language providing that

future payments are to be paid directly to the chapter 13 trustee or to creditors; and

(2) by August 4, 2021, submit a comprehensive list to the court of all her pending

chapter 13 cases filed in White Plains, Poughkeepsie, and Manhattan in which the

chapter 13 plan provided for the escrow of post-petition mortgage payments.  App. at

A037.  On August 4, 2021, Ms. Tirelli purported to file the required comprehensive list; it contained a single case.  App. at A038 – A040.

On September 20, 2021, Ms. Tirelli responded to the Order to Show Cause with a memorandum requesting it be vacated and a declaration.  App. at A041 – A047, A048 – A058.  She asserted (1) that "no misrepresentation was ever knowingly made to the Court by the undersigned or person under her direction or control at any time;" (2) that the escrowing practices in question had been continued "with the knowledge, consent and actual direction" of the previous presiding bankruptcy judge; and (3) "[e]thical considerations precluded [her] from volunteering the fact that a particular Debtor/ Client had not made certain payments to" her.  App. at A050 – A051, A053.  She stated that, because she did not "know[] which representations made to the Court [we]re being referenced," she could not say whether she made misrepresentations "other than to make clear that at no time ha[d she] ever represented to the Court that funds were held by her office, if such representation were not entirely accurate in all respects."  App. at A057.

Based on the information Ms. Tirelli provided, the United States Trustee determined that, of the seventeen cases identified by the bankruptcy court, sixteen cases had non-standard plan language potentially relevant to the Order to Show Cause.  Three cases required debtors to hold back or aside disputed payments.[5]

---

[5] "Debtor Hold Back" cases:  *In re Reyes*, No. 16-22556 (Bankr. S.D.N.Y.); *In re Jackson*, No. 16-23514 (Bankr. S.D.N.Y.); *In re Berger*, No. 17-22921 (Bankr. S.D.N.Y.).

Thirteen cases required Ms. Tirelli or her firm to hold funds in escrow.[6]  App. at A406 – A407.  In six of those cases, debtors never made any payments to escrow.[7]  App. at A407.  Ms. Tirelli did hold funds in escrow for the remaining seven cases plus one "hold back" case.[8]  App. at A407.  Of these eight cases where escrow payments were actually made, she still held escrowed funds in four of them.[9]  App. at A407.  This material can be summarized as follows:

---

[6] "Attorney Escrow" cases:  *In re Cretekos*, No. 18-22239 (Bankr. S.D.N.Y.); *In re Occhipinti*, No. 18-22690 (Bankr. S.D.N.Y.); *In re Watson*, No. 18-22923 (Bankr. S.D.N.Y.); *In re Kramer*, No. 18-22940 (Bankr. S.D.N.Y.); *In re Brown*, No. 18-23036 (Bankr. S.D.N.Y.); *In re Desmond*, No. 18-23750 (Bankr. S.D.N.Y.); *In re Faupel*, No. 19-22007 (Bankr. S.D.N.Y.); *In re Gizzo*, No. 19-22051 (Bankr. S.D.N.Y.); *In re Kolkowski*, No. 19-22172 (Bankr. S.D.N.Y.); *In re Pelle*, No. 19-22229 (Bankr. S.D.N.Y.); *In re Akerib*, No. 19-22276 (Bankr. S.D.N.Y.); *In re Frankel*, No. 19-22281 (Bankr. S.D.N.Y.); *In re Farkas*, No. 19-22520 (Bankr. S.D.N.Y.).

[7] No escrow payment cases:  *In re Occhipinti*, No. 18-22690; *In re Kramer*, No. 18-22940; *In re Brown*, No. 18-23036; *In re Desmond*, No. 18-23750; *In re Faupel*, No. 19-22007; *In re Gizzo*, No. 19-22051.

[8] Escrow payment cases:  *In re Berger*, No. 17-22921 (Bankr. S.D.N.Y.) (holdback case that paid into escrow); *In re Cretekos*, No. 18-22239; *In re Watson*, No. 18-22923; *In re Kolkowski*, No. 19-22172; *In re Pelle*, No. 19-22229; *In re Akerib*, No. 19-22276; *In re Frankel*, No. 19-22281; *In re Farkas*, No. 19-22520.

[9] Funds held at Order to Show Cause cases:  *In re Berger*, No. 17-22921 ($28,800); *In re Cretekos*, No. 18-22239 ($28,000); *In re Watson*, No. 18-22923 ($8,511); *In re Akerib*, No. 19-22276 ($7,200).

| _Case_ | _Non-Standard Plan Type_ | _Escrow Payments Made?_ | _Funds Still Held at Order to Show Cause?_ |
|---|---|---|---|
| _In re Reyes_, No. 16-22556 | Debtor Hold Back | — | — |
| _In re Jackson_, No. 16-23514 | Debtor Hold Back | — | — |
| _In re Berger_, No. 17-22921 | Debtor Hold Back | Yes | Yes |
| _In re Cretekos_, No. 18-22239 | Attorney Escrow | Yes | Yes |
| _In re Watson_, No. 18-22923 | Attorney Escrow | Yes | Yes |
| _In re Akerib_, No. 19-22276 | Attorney Escrow | Yes | Yes |
| _In re Kolkowski_, No. 19-22172 | Attorney Escrow | Yes | No |
| _In re Pelle_, No. 19-22229 | Attorney Escrow | Yes | No |
| _In re Frankel_, No. 19-22281 | Attorney Escrow | Yes | No |
| _In re Farkas_, No. 19-22520 | Attorney Escrow | Yes | No |
| _In re Occhipinti_, No. 18-22690 | Attorney Escrow | No | — |
| _In re Kramer_, No. 18-22940 | Attorney Escrow | No | — |
| _In re Brown_, No. 18-23036 | Attorney Escrow | No | — |
| _In re Desmond_, No. 18-23750 | Attorney Escrow | No | — |
| _In re Faupel_, No. 19-22007 | Attorney Escrow | No | — |
| _In re Gizzo_, No. 19-22051 | Attorney Escrow | No | — |

The court held a hearing on October 20, 2021.  Just before the hearing, one of

Ms. Tirelli's clients, Ms. Desmond, testified in her bankruptcy case that, when Ms.

Desmond told Ms. Tirelli she "d[id]n't have that kind of money to put in escrow" as

Ms. Tirelli said her plan required, Ms. Tirelli told her not to "worry about it, we'll talk about it again.  And I'll be honest with you, I never thought about it again, and I never heard anything from Ms. Tirelli about it, that I still need to start putting money in there."  App. at A620 – A621.  Ms. Tirelli, who was present at the hearing, said that she told Ms. Desmond she could not stop a foreclosure sale because the secured creditor had not been paid, but she did not contest Ms. Desmond's statement about the escrow.  App. at A627 – A628.

In the subsequent hearing on the Order to Show Cause, the court directed Ms. Tirelli to (1) confirm that there were no cases where the escrow practice was continuing; (2) report whether there were other cases in which the escrow provisions were included in chapter 13 plans; (3) consult with the United States Trustee and chapter 13 trustee to determine what should happen to funds still held in escrow; and (4) provide details about the escrow accounts in question, as well as an accounting.  App. at A091 – A100.  Regarding the details of the escrow accounts, the court stated, "I would think that it would be as simple as getting the bank statements for the accounts."  App. at A107.

### C.  After her resistance to providing the required information fails, Ms. Tirelli reveals a long-term shortfall in her escrow account.

After fighting providing the court-ordered details of her escrow account for more than four months, in March 2022—detailed by the court at App. at A343 –

A350—Ms. Tirelli finally provided the court, the United States Trustee, and the chapter 13 trustee with the mandated account records.  App. at A350.

At a hearing on March 24, 2022, the United States Trustee[10] explained that those records showed that Ms. Tirelli's escrow account had a shortfall for at least two months.  App. at A351.  In other words, Ms. Tirelli's escrow account did not have sufficient funds to cover her clients' payments to her for inclusion in her escrow account.  Ms. Tirelli's counsel later acknowledged that this shortfall began in June 2019 and lasted until August 2021—shortly after the court issued the Order to Show Cause.  App. at A134 – A137.  Ms. Tirelli's counsel also stated that Ms. Tirelli had deposited a fee from an outside party into her escrow account and credited it to her clients' balances.  App. at A131 – A134.

The court directed that the parties brief the merits of the Order to Show Cause. App. at A125, A138 – A139, A141 – A142.  Ms. Tirelli requested that these briefs be filed under seal.  App. at A142.  The court ordered the parties to file their briefs under seal and directed the parties to brief whether to maintain the pleadings under seal. App. at A352.

---

[10] Ms. Tirelli's brief claims (at 7) that she "acknowledged the bookkeeping error, before it was identified by the lower Court."  She cites nothing for this claim.  In fact, it was the United States Trustee who identified the escrow shortfall at the hearing. App. at A121.  Ms. Tirelli had an opportunity to come clean about the shortfall first, but she instead "cede[d] the floor to counsel" for the United States Trustee, who disclosed the shortfall to the court.  App. at A121.

The United States Trustee, the chapter 13 trustee, and Ms. Tirelli all filed sealed briefs on the merits of the Order to Show Cause.  App. at A392 – A436, A469 – A481, A150 – A170.  The United States Trustee and the chapter 13 trustee also moved to unseal those briefs, which Ms. Tirelli opposed.  App. at A437 – A468, A482 – A485, A171 – A182.  The court held argument on the Order to Show Cause and the United States Trustee's motion to unseal on September 14, 2022.  App. at A490 – A590.[11]

### D.    The court unseals the briefs, refers Ms. Tirelli to this Court's Committee on Grievances, and directs Ms. Tirelli temporarily to provide its order to the bankruptcy judges she appears before.

On April 28, 2023, the court issued a comprehensive order on the merits of the Order to Show Cause and the United States Trustee's motion to unseal the parties' briefs on the merits of the Order to Show Cause.  App. at A329 – A391.

The court granted the United States Trustee's motion to unseal.[12]  App. at A354 – A369, A389 – A390.  The court observed that, under 11 U.S.C. § 107,

---

[11] The night before the hearing, Ms. Tirelli emailed a supplemental brief and a collection of transcripts to the bankruptcy court.  App. at A353 n.18.  At the hearing the next morning, the court struck the supplemental brief but admitted the transcripts.  App. at A353 n.18, A183 – A328.  Ms. Tirelli did not renew the arguments made in the supplemental brief during the hearing.  However, her brief to this Court (at 17-33) reiterates the same arguments that appeared only in her unfiled and struck pleading.

[12] Just as it is on appeal, *see infra* at 32-33, it was unclear before the bankruptcy court what exactly Ms. Tirelli wanted sealed.  App. at A354 n.19.  But at argument, Ms. Tirelli stated she wanted the briefs on the merits of the Order to Show Cause sealed.  App. at A354 n.19.

bankruptcy court filings must be public unless an enumerated exception applies.  App. at A355 – A356.  Ms. Tirelli argued only that the briefs were scandalous or defamatory under section 107(b)(2), but the court rejected her argument.  The court held that the briefs were not scandalous because they were factual, relevant to the proceedings, and not filed for an improper purpose.  App. at A358 – A361.  The court further held that the briefs were not defamatory because they were factual recitations of the events and legal argument about those facts.  App. at A361 – A363.  Finally, the court rejected Ms. Tirelli's arguments that, even if section 107 did not apply, the court should still seal the briefs.  App. at A364 – A369.

On the merits of the Order to Show Cause, the court first concluded that it had the power to discipline attorneys who appear before it.  App. at A369 – A371.  The court then found that Ms. Tirelli's shortfall in her escrow account, her failure to reconcile the account during the two-year shortfall period, and her commingling of funds earmarked for escrow with other funds violated Connecticut Professional Rules 1.15(b) and 1.15(j)(9)[13] and New York Professional Rule 1.15(a)-(b), and merited referral to a disciplinary body.  App. at A371 – A377, A390.  The court did not definitively quantify the value of her escrow violations, although it noted an admitted deficit of $21,300 in the account and likely $65,000 of commingled funds.  App. at A375 – A376, A390 n.40.  Ms. Tirelli does not challenge this part of the court's order.

---

[13] At times, the court mistakenly cited Rule 1.15(g)(9) instead of Rule 1.15(j)(9).  There is no Rule 1.15(g)(9).

The court then turned to the issue of whether Ms. Tirelli's representations to the court constituted misconduct.  It found that it did and further determined her conduct merited referral to a disciplinary body.  App. at A377, A386 – A387, A390.

In reaching this conclusion, the court found the "Ms. Tirelli lacked candor . . . in her repeated representations to the Court about the escrowing of proceeds in these cases."  App. at A377.  "It is undisputed that funds were not escrowed in six of the cases identified in the [Order to Show Cause]—despite representations in the Chapter 13 plans—and that there were shortfalls in the escrowed funds in another four cases."  App. at A378 – A379.

The court explained the significance of the chapter 13 plans' provisions requiring that mortgage-related payments be escrowed or held back.  The chapter 13 plan, which is approved by court order, 11 U.S.C. § 1325, "is a living document that controls the case going forward."  App. at A379.  Statements in the plans that payments would be escrowed or held back "impacted the rights and conduct of secured creditors with mortgages on the Debtors' homes by telling them—sometimes incorrectly—that mortgage payments were being made" and "discouraged secured creditors from seeking relief" from the automatic stay to protect their secured interests.  App. at A382.  These statements also impacted unsecured creditors because the represented escrow or holdback payments were deducted from the disposable income available to pay unsecured creditors; but if the payments were not being made

towards the secured debt, "those funds would [be] available as a potential source of recovery for unsecured creditors."  App. at A382 – A383 & n.37.

"As a highly competent and seasoned bankruptcy practitioner with numerous Chapter 13 cases before th[e bankruptcy c]ourt, M[s]. Tirelli was well aware of these consequences in representing that the postpetition mortgage payments were being escrowed."  App. at A383.  The court also observed that, in some cases, "Ms. Tirelli continued to represent that all was well with the escrow protocol" or "repeatedly delayed in providing information."  App. at A383 – A386.  "In sum, the representations in the Debtors' plans about the escrowing of these funds was clearly inaccurate in numerous cases and something that Ms. Tirelli would have reason to know was the case given the facts here."  App. at A386.

The court rejected Ms. Tirelli's argument that she "did not ever directly lie to the Court," App. at A387, observing that "[c]andor is not the state of simply not lying; candor is the quality of being open and honest in expression.  An attorney cannot excuse her lack of candor by pointing out that she did not technically lie."  App. at A387 (cleaned up).  The court also rejected her argument that the attorney-client privilege prevented her from revealing the non-payments.  "[T]he [c]ourt reject[ed] the notion that the payment—or lack of payment—to creditors in a bankruptcy is covered by the attorney-client privilege."  App. at A388.  Additionally, "in holding money in escrow for individuals who were bankruptcy debtors, Ms. Tirelli was not

acting in the capacity of an attorney, but rather in the non-legal capacity of an escrow agent for those funds." App. at A388.

Having concluded that Ms. Tirelli violated ethics rules relating to the escrow account and her duty of candor, the court determined to refer Ms. Tirelli to this Court's Committee on Grievances. App. at A390. And while that Committee adjudicates her case, "[u]ntil proceedings are concluded before the Committee, the [c]ourt require[d] that Ms. Tirelli provide a copy of [its] Memorandum of Decision to any judge presiding over any case where Ms. Tirelli is acting as counsel to a bankruptcy debtor," in order to "ensure that the judge in any existing or future case is put on notice of the issues that arose in these cases so that the judge may take whatever protective action they deem appropriate, including but not limited to imposing requirements regarding the reporting and reconciliation of escrow balances." App. at A390.

Ms. Tirelli timely appealed the order. App. at A486 – A489. She did not seek a stay of the bankruptcy court's order with respect to unsealing the briefs or with respect to the directive to provide the court's opinion to other judges. The United States Trustee does not know the current status of the proceedings before this Court's Committee on Grievances.

23

## SUMMARY OF THE ARGUMENT

Ms. Tirelli does not contest the bankruptcy court's findings that she violated ethics rules relating to her escrow account and agrees that referral to this Court's Committee on Grievances was appropriate. But she continues to challenge the court's finding that she lacked candor, the court's unsealing of the parties' briefs on the merits of the Order to Show Cause, and the court's directive to provide a copy of the order to other judges. All her challenges are without merit.

I.    Ms. Tirelli's duty of candor to the bankruptcy court included the obligation to correct incorrect representations. Ms. Tirelli volunteered to assume a role in a bankruptcy case for which only she was able to monitor compliance. The chapter 13 plans for six of her clients promised they would make payments to her to hold in escrow until the mortgage validity was adjudicated. Because Ms. Tirelli was the only one who could say if that part of the plan was complied with, when her clients did not pay into the escrow as required, Ms. Tirelli was obligated to remedy it either by letting the court know her clients were not doing so or removing the representation from their chapter 13 plans. Instead, her omissions allowed her clients to avoid paying secured creditors hundreds of thousands of dollars to which they otherwise were entitled and enabled these failures to go undetected in the bankruptcy system for extended periods.

Ms. Tirelli's granular parsing of various transcripts misses the overall point that she was the only one besides her clients who knew the chapter 13 plans were not

24

being complied with.  And despite this controlling position, she improperly blames the court and other parties for trusting that debtor-proposed repayment plans would be followed.  Ms. Tirelli's complaints about specific cases are irrelevant to the court's overall conclusion that concealing noncompliance with the plans unless expressly asked about it demonstrated a lack of candor.

Finally, Ms. Tirelli misrepresented her escrow practices to the court because, although she promised to hold her clients' funds in escrow, the shortfall in her escrow account made that representation incorrect.  And besides the representation in each of the chapter 13 plans, Ms. Tirelli represented in one case that the money was "safe" when it was not.  Thus, there were multiple reasons to conclude Ms. Tirelli made representations to the court concerning her escrow practices that were incorrect.

Given the plain interest from the court, the chapter 13 trustee, and secured creditors about the holdbacks and escrow payments as a general matter, Ms. Tirelli had a duty to disclose the true status of her clients' escrow payments.  Instead, she said as little as she could get away with each time it came up.  Under these circumstances, that showed a lack of candor.

II.     Section 107 of the Bankruptcy Code governs whether a paper filed in bankruptcy court must be sealed.  Unless one of the specifically enumerated circumstances applies, a pleading must be filed on the public docket.  Ms. Tirelli's sole argument under section 107 is that the material in the parties' briefs was "scandalous or defamatory."  But the material in the parties' briefs was factually accurate

recitations of the background of the Order to Show Cause and the opinions of the United States Trustee and chapter 13 trustee about what result should follow.  Such material is neither scandalous nor defamatory; indeed, Ms. Tirelli concedes she did in fact commit ethics violations regarding her escrow account.  Her arguments regarding the standards that apply in state disciplinary proceedings or in district courts miss the mark when the proceedings occurred in bankruptcy court, which must follow section 107.  And her complaints about the risks to her reputation ring hollow when she has not sought a stay of the unsealing order and did not even attempt to file her appellate brief discussing these same issues under seal.

III.    Given it is undisputed Ms. Tirelli committed misconduct relating to her escrow account, the bankruptcy court's choice of remedy is entitled to deference.  Its choice to require Ms. Tirelli to provide its order to other judges solely while this Court's Committee on Grievances considers final sanctions is an appropriate interim, minimally invasive measure.  Ms. Tirelli's argument to the contrary is, essentially, a suggestion that she will not do this again, but the bankruptcy court was within its authority to put in place an interim measure to promote proper conduct.

## ARGUMENT

### I.    Ms. Tirelli Breached Her Duty of Candor to the Bankruptcy Court by Omitting That the Escrow Requirements in Her Clients' Plans Were Not Followed.

As an attorney barred in Connecticut and admitted to practice before this Court, Ms. Tirelli must comply with both Connecticut and New York ethics rules. Local Civil Rule 1.3(a)(6)(F), (a)(7).  Both states have Rule 8.4, which state that lawyers may not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation" nor "engage in conduct that is prejudicial to the administration of justice."  N.Y. Rules of Prof'l Conduct R. 8.4(c)-(d); *see also* Conn. Rules of Prof'l Conduct R. 8.4(3)-(4).  From Rule 8.4 and others, courts have found a "an ethical duty of candor in all of their dealings with the Court." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018) (Aaron, M.J.).  This duty of candor includes an obligation to correct material misstatements made to the court. *See Google LLC v. Starovikov*, No. 21cv10260 (DLC), 2022 WL 16948296, at *13 (S.D.N.Y. Nov. 15, 2022).

Ms. Tirelli's clients' proposed chapter 13 plans in 13 cases meant that she had to comply with the plan provisions requiring Ms. Tirelli to hold her clients' post-petition mortgage payments.  App. at A333 – A335 n.3.  She drafted the non-standard escrow provision, authorized it to be included in the plans, personally signed all but one of the plans, and appeared as counsel for the debtor in the sole remaining case. App. at A380 & n.34.  In control of the escrow account, Ms. Tirelli was the only

person—besides the debtor him- or herself—who could say whether that provision was being complied with.  She knew that the court, the secured creditors, and the chapter 13 trustee were very interested in the escrow procedure for two years because of the amounts of money Ms. Tirelli was supposed to be holding in escrow.  *See supra* at 6-12.  And they repeatedly asked about the status of mortgage payments and escrowed funds.  She knew—or reasonably should have known—that failing to comply with the escrow procedures could affect the creditors in her clients' cases.  And yet she knew—or reasonably should have known—that six of her clients were not paying anything into the escrow as required by their plans.

Under these circumstances, the court correctly found that Ms. Tirelli's duty of candor required her to do *something* to correct the incorrect representation in the plans, whether by letting the court and parties know that the escrow procedures were not being complied with in the six cases or by removing the escrow language from their plans.  App. at A389.  But by sitting on the information unless expressly asked by the court or parties, she failed to confirm and then share an important fact that affected the rights of others.  App. at A382 – A383 (explaining the impact on secured and unsecured creditors).

Ms. Tirelli recounts at great length—and, in many cases, for the first time on appeal, *see supra* at 19 n.11—the sequences of individual hearings in a number of cases and asserting that no misrepresentations were made in those hearings.  ECF No. 16 at 17-33.  But as the bankruptcy court pointed out, candor is more than saying she "did

not technically lie." App. at A387. Her lack of candor was failing to correct what otherwise were material misstatements in six chapter 13 plans.

Ms. Tirelli also suggests (at 13-16) that certain of the six cases with no escrow payments that were identified by the court and United States Trustee should not count against her for a variety of reasons. She argues (at 13) that *In re Brown*, No. 18-23036, in which no escrow payments were made despite the plan's terms, should not count against her because Ms. Tirelli "was retained for litigation purposes only." But Ms. Tirelli's firm was designated by the plan to receive the escrow payments, presumably with Ms. Tirelli's approval, and she appeared as one of Ms. Brown's counsel in her bankruptcy. App. at A334 n.3, A380 n.34. She argues (at 13) that another case, *In re Kramer*, No. 18-22940, should not count against her because the debtor "received a loan modification and paid the mortgage creditor directly for more than approximately one year." But Ms. Tirelli does not say when the debtor started making payments to his mortgage creditor, nor whether there was a time when the debtor was not paying his creditor directly and therefore should have bene escrowing payments. And she did not correct the representation in his plan that he was paying money into escrow.

Ms. Tirelli also argues (at 18-21, 22-24, 31-33, & 34-36) that she disclosed that the debtors in *In re Desmond*, No. 18-23750, *In re Faupel*, No. 19-22007, and *In re Gizzo*, No. 19-22051, were not making escrow payments when asked. But she allowed the incorrect representations that these debtors were making payments into escrow to go

29

uncorrected until she was directly asked, allowing tens of thousands of dollars of payments to go unpaid under the radar.  And even when Ms. Tirelli did disclose the failure to pay, she did not amend the plans to remove that requirement, which allowed the incorrect representations to fester for another year.  *See supra* at 10-12.

But even if Ms. Tirelli were right about regarding these five cases, she still knew that the chapter 13 plan in the sixth case, *In re Occhipinti*, No. 18-22690, incorrectly represented that Mr. Occhipinti was paying post-petition mortgage payments to her to hold in escrow, because he did not actually deliver any such payments to Ms. Tirelli. App. at A340 & n.9.  So, at the very least, Ms. Tirelli lacked candor in the *Occhipinti* case.

Before the bankruptcy court, Ms. Tirelli also argued that her duties as an attorney prevented her from disclosing her clients' noncompliance.  App. at A388. But as the bankruptcy court noted, there are two reasons to reject this argument. App. at A388 – A389.  *First*, payment (or nonpayment) into escrow of debts owed to creditors is not a confidence protected by the attorney-client relationship.  *See, e.g., Randy Int'l, Ltd. v. Automatic Compactor Corp.*, 412 N.Y.S.2d 995, 998 (Civ. Ct. 1979) ("Simply stated, the disclosure of whether or not money is being held in escrow does not involve the giving of evidence of a 'confidential' communication made 'in the course of professional employment.'").  *Second*, even if there were tension between her obligations to her clients and her duty of candor to the court, Ms. Tirelli could have resolved the tension by amending the plans to remove the escrow language.  *See* 11

30

U.S.C. §§ 1323 & 1329 (pre- and post-confirmation plan amendments).  Doing so would have ended the incorrect representation to the court that Ms. Tirelli would hold mortgage payments for those debtors.  Based on the facts of these cases, the court did not err in concluding that plan amendment should have occurred based on the facts of these cases.  Ms. Tirelli blames (at 37 & 40-41) the court, the United States Trustee, and the chapter 13 trustee for not making her amend her clients' chapter 13 plans to correct representations that they were making escrow payments.  But Ms. Tirelli alone had the relevant knowledge as to whether her clients were paying as required by their plans.

Moreover, there is a second way in which Ms. Tirelli lacked candor to the court.  As the United States Trustee argued below, the now-conceded escrow shortfall meant that the debtors who gave her money to hold were under-protected.  App. at A429 – A430, A353.  Thus, the representation that the money would be held in escrow for at least four debtors whose money Ms. Tirelli still held during the Order to Show Cause proceedings was false.  *See supra* at 15-16 & n.9.  Additionally, in *In re Akerib*, No. 19-22276, when on August 28, 2019, Ms. Tirelli stated, "[T]he money is safe.  It is in escrow.  I can certainly give the trustee an accounting," App. at A690, that was false.  The money simply was not safe in her escrow account because, as Ms. Tirelli later admitted, there was a shortfall in the account at that time.  App. at A135 – A137.

31

Thus, Ms. Tirelli failed to correct the representation that six debtors would pay post-petition mortgage payments into escrow, and she misrepresented that the funds she was paid were properly escrowed.  Both showed a lack of candor to the court, and its order should be affirmed.

## II.   The Bankruptcy Court Properly Unsealed the Parties' Briefs.

"[A] paper filed in a case under [the Bankruptcy Code] and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge" unless specifically enumerated circumstances apply. 11 U.S.C. § 107(a).  Section 107(a) "evidences congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994).  If one of the enumerated exceptions to public disclosure applies—but only if one of them applies—the court must seal the relevant document.  *Id.* at 27; *Air Line Pilots Ass'n, Int'l v. American Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 433 n.7 (S.D.N.Y. 1993).[14]

Ms. Tirelli's brief fails to explain what exactly she thinks should be sealed.  She states (at 42) that the bankruptcy court "erred by failing to seal these proceedings." But if she means that the bankruptcy court should have sealed *everything* concerning its

---

[14] Ms. Tirelli's unsupported assertion (at 42) that section 107 "vests broad discretion in the Court to seal papers based upon the request of a party in interest" is, therefore, without merit.  Pursuant to its own terms, section 107 allows for sealing only in the enumerated situations it identifies.

Order to Show Cause, this argument is forfeited.  This is because most of the Order to Show Cause proceedings and pleadings took place in open court or were filed on the public docket from the start.  Ms. Tirelli first made a request to seal material: when the bankruptcy court scheduled briefs from the parties on the merits of the Order to Show Cause on March 24, 2022.  App. at A142.[15]  To the extent she now wants to seal any material predating that request, she has not preserved it for appeal. *See In re Nortel Networks Corp. Secs. Litig.*, 539 F.3d 129, 132-33 (2d Cir. 2008) (per curiam).

Later in her brief, Ms. Tirelli says (at 46-47) that it was the "invited suggestions" from the United States Trustee and the chapter 13 trustee—meaning their respective merits briefs below—that "did not serve the administration of justice or the advancement of the underlying Chapter 13 cases."  This more limited request accords with the request she made to the bankruptcy court before the merits briefs were filed and at the oral argument on the merits of the Order to Show Cause, App. at A142, A354 n.19, and therefore has been properly preserved.

Below, Ms. Tirelli made only a single argument that section 107 requires the material be sealed:  that "the allegations and recommendations are defamatory" under section 107(b)(2).  App. at A177.  However, the bankruptcy court analyzed in detail

---

[15] The court also ordered her to submit information about her escrow account to the court *in camera*.  App. at A114.  Those materials, which were also submitted to the United States Trustee and the chapter 13 trustee as confidential information, remain under seal.

whether the briefs were "scandalous or defamatory," as required for sealing under section 107(b)(2) and concluded they were not. App. at A358 – A363. Its conclusion was correct.

To be "scandalous" within the meaning of section 107(b)(2), courts look to cases interpreting Civil Rule 12(f). *See Togut v. Deutsche Bank AG, Cayman Islands Branch (In re Anthracite Capital, Inc.)*, 492 B.R. 162, 176 (Bankr. S.D.N.Y. 2013). Under Civil Rule 12(f), "[u]nless it is clear that portions of the pleadings sought to be struck have no bearing on the subject matter of the litigation and that their inclusion will prejudice the defendant, the [pleadings] should remain intact." *First City Nat'l Bank & Trust Co. v. FDIC*, 730 F. Supp. 501, 514 (E.D.N.Y. 1990) (cleaned up). Bankruptcy courts in this District have also described the standard as requiring it "be shown that no evidence in support of the allegation would be admissible." *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 558 (Bankr. S.D.N.Y. 2007).

As the bankruptcy court below noted, there can be no question that the recommendations of the United States Trustee and the chapter 13 trustee were relevant to the Order to Show Cause: they discussed the background of the proceedings and recommended actions. Moreover, because they did describe the background of the proceedings and the opinions of the United States Trustee and chapter 13 trustee about what should follow, they were not "grossly offensive," App. at A359, nor filed for an improper purpose, App. at A359 – A361.

Nor were the briefs "defamatory" within the meaning of section 107(b)(2). The material presented in the briefs was literally true—*e.g.*, the background of the proceedings—or the opinions of the United States Trustee and the chapter 13 trustee—*e.g.*, whether misconduct occurred and what to do about it.

As a corollary, Ms. Tirelli raises in passing (at 44) that sealing was needed to protect against "the undue risk to her professional reputation." But in support of her burden to justify sealing, Ms. Tirelli cites no authorities for the proposition that reputation is a protectable interest under section 107(b)(2). It is, rather, quite the opposite. "Mere embarrassment, or harm to reputation based on nonscandalous, nondefamatory information disclosed is not sufficient to restrict public access" under section 107. *Collier on Bankruptcy* ¶ 107.03[1][b] (Richard Levin & Henry J. Sommer eds., 16th ed.); *see also Neal v. Kansas City Star (In re Neal)*, 461 F.3d 1048, 1054 (8th Cir. 2006) ("In cases analyzing § 107(b)(2), courts have repeatedly stated that injury or potential injury to reputation is not enough to deny public access to court documents."); *In re Food Mgmt.*, 359 B.R. at 554 ("Section 107(b) is not intended to save the debtor or creditors from embarrassment.").

Ms. Tirelli's brief fails to respond meaningfully to the bankruptcy court's analysis. Her brief appears to be an almost verbatim repeat of her opposition to the United States Trustee's motion to unseal. *Compare*, *e.g.*, ECF No. 16 at 42-45, *with* App. at A175 – A177; ECF No. 16 at 45-48, *with* App. at A178 – A180; ECF No. 16 at 48, *with* App. at A181.

35

Moreover, Ms. Tirelli has conceded that much of the opinions presented in the merits briefs filed below are true; she concedes she committed misconduct by having a shortfall in her escrow account and failing to reconcile the account for at least two years. As much as that misconduct may hurt Ms. Tirelli's reputation, it is not "scandalous or defamatory" to state true facts relevant to a court inquiry.

Ms. Tirelli's other arguments (at 46-48) are that the briefs should have been sealed because disciplinary proceedings would be confidential and because she says she meets the standard of *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2010). But those analogies are misplaced, because it is section 107 that governs sealing in bankruptcy court, not state ethics rules or even the Civil Rules without incorporation by the Bankruptcy Rules. If section 107 requires that a pleading be unsealed, it must be unsealed.[16]

Her conduct on appeal also is not consistent with her stated concern for professional embarrassment and harm to her reputation. Ms. Tirelli did not seek a

---

[16] Before the bankruptcy court, Ms. Tirelli also relied on *Robbins v. Tripp*, 510 B.R. 61 (E.D. Va. 2014), where the district court affirmed the bankruptcy court's order sealing an attorney's court-ordered "brutally candid" self-assessment of the attorney's practice as a whole. The decision is irrelevant here for two reasons. *First*, the court relied in part on section 107(b)(1)'s confidential commercial information exception to unsealing, *id.* at 66-67, which is not applicable here because Ms. Tirelli never raised it and because Ms. Tirelli's escrow fund and representations to the court are not confidential commercial information. *Second*, the court found the self-assessment scandalous or defamatory because the self-assessment was "potentially untrue or irrelevant," "had no effect on the underlying case before the Bankruptcy Court," and "contains opinions [from witnesses] that were not subject to cross-examination." *Id.* at 67-69. None of those circumstances is present here.

stay of the bankruptcy court's order, so the merits briefs filed in the bankruptcy court have been publicly accessible since May 1, 2023.  App. at A024.  The court's April 28, 2023, opinion, moreover, has been published in the Bankruptcy Reporter for five months.  *See* 651 B.R. 99 (Bankr. S.D.N.Y. 2023).  And Ms. Tirelli did not move to seal the opinion or the filings in this appeal, so she filed her own opening brief discussing the proceedings on the public docket of this Court.

While it may be embarrassing for an ethical lapse to come to the public's attention, that does not require sealing under section 107.  Ms. Tirelli failed to show that section 107 required sealing, and, accordingly, the bankruptcy court properly unsealed the parties' briefs.

### III.   The Bankruptcy Court Did Not Abuse Its Discretion by Requiring Ms. Tirelli, as Temporary Measure, To Provide Its Opinion to Other Courts.

Ms. Tirelli acknowledges that she was rightly referred to this Court's Committee on Grievances for her escrow account shortage and her failure to reconcile the account for at least two years, but she challenges the bankruptcy court's decision to require her to provide the court's opinion to other bankruptcy judges while those disciplinary proceedings take place.  "What measure of discipline should be meted out rest[s] in the sound discretion of the" bankruptcy court.  *In re Chopak*, 160 F.2d 886, 887 (2d Cir. 1947).

The bankruptcy court thought its interim protective measure appropriate to "ensure the judge in any existing or future case is put on notice of the issues that

arose in these cases so that the judge may take whatever protective action they deem appropriate, including but not limited to imposing requirements regarding the reporting and reconciliation of escrow balances." App. at A390. As a temporary measure until this Court's Committee reaches a decision, the bankruptcy court's election of remedies was not an abuse of discretion. Courts can require providing a copy of an opinion to other courts. *See, e.g., MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 994 F. Supp. 447, 448 (S.D.N.Y. 1997), *aff'd*, 138 F.3d 33 (2d Cir. 1998); *Park Nat'l Bank of Houston v. Kaminetzky*, 976 F. Supp. 571, 588-89 (S.D. Tex. 1996).

Ms. Tirelli makes only skeletal arguments in favor of reversal. She says (at 49-50) that her escrow practice has been discontinued and will not be resumed, that she "remains an attorney in good standing and is subject to all ethical requirements imposed upon licensed attorneys," and that the bankruptcy court was wrong about the issue of her candor. These underdeveloped arguments fail.

*First*, Ms. Tirelli may represent clients in other districts without the prohibition and could decide to continue the practice there at any moment. The bankruptcy court's decision to be protective of the system was reasonable.

*Second*, Ms. Tirelli may be an attorney in good standing, but she has been referred to a disciplinary body and has admitted one (serious) ethical violation and found to have committed a second. Her obligation to comply with the ethics rules before the entry of the court's order did not prevent her from committing those

violations, so a temporary protective measure while the Committee on Grievances considers the referral is appropriate.

*Third*, Ms. Tirelli admits she committed ethical violations regarding the escrow account shortfall and the failure to reconcile the account. So "the foundation [the bankruptcy court] relied upon to suggest this relief is appropriate," ECF No. 16 at 50, has been *conceded*. All Ms. Tirelli challenges on appeal is the issue of candor, which was not the stated reason the bankruptcy court required her to provide its order to other judges. App. at A390. And, in all events, as explained above, the court was correct about Ms. Tirelli's lack of candor. *See supra* at 27-32.

## CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to affirm the bankruptcy court's order.

Respectfully submitted,

WILLIAM K. HARRINGTON
United States Trustee for Region 2

September 27, 2023

By: /s/ Frederick G. Hall
FREDERICK GASTON HALL
Trial Attorney

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
Trial Attorney

Department of Justice
Executive Office for
  United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.: (202) 307-1399
Fac.:  (202) 307-2397
frederick.g.hall@usdoj.gov

WILLIAM K. HARRINGTON
United States Trustee for Region 2
LINDA A. RIFFKIN
Assistant United States Trustee
MARK E. BRUH
ANDREW D. VELEZ-RIVERA
Trial Attorneys

Department of Justice
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Suite 534
New York, NY 10004
Tel.:  (212) 510-0500
Fac.:  (212) 668-2361
mark.bruh@usdoj.gov
andy.velez-rivera@usdoj.gov

40

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitations set

forth in Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) in that the brief contains

10,239 words as counted by Microsoft Word.

*/s/ Frederick G. Hall*
FREDERICK GASTON HALL
Trial Attorney

## CERTIFICATE OF SERVICE

I certify that on September 27, 2023 I caused to be served the foregoing via the

CM/ECF Electronic Filing system, which served all parties in this case.

/s/ *Frederick G. Hall*
FREDERICK GASTON HALL
Trial Attorney