UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

JUSTO REYES, et al.,

                Debtors.

---

LINDA TIRELLI,

                Appellant,

      - against -

WILLIAM K. HARRINGTON as United States
Trustee, and THOMAS C. FROST as Chapter 13
Trustee,

                Appellees.

**OPINION & ORDER**

23-CV-04185 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Linda Tirelli ("Appellant") appeals from the Memorandum Decision & Order dated April 28, 2023 ("Order") entered by Judge Sean H. Lane of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). A Notice of Appeal was filed in this Court on May 19, 2023 (Doc. 1). Appellant filed her brief, pursuant to the Court's Scheduling Order (Doc. 10), on August 14, 2023. (Doc. 16, "App. Br."). The U.S. Trustee ("Appellee") filed its brief on September 27, 2023 (Doc. 18, "Opp. Br."), and the appeal was fully submitted with the filing of Appellant's reply brief on October 27, 2023 (Doc. 21, "Reply"). The Court heard argument from the parties on November 6, 2023.[1]

For the reasons set forth below, the Order is AFFIRMED.

---

[1] Following oral argument, the Court ordered the parties to submit statements regarding the applicable standard of review for this appeal. The parties submitted their statements regarding the applicable standard of review on November 6, 2023. (Doc. 22; Doc. 23; Doc. 24).

## BACKGROUND

I.      Appellant's Chapter 13 Repayment Plans

Appellant is a consumer bankruptcy lawyer licensed to practice in Connecticut and admitted to practice before this Court. (App. at A371).[2] She has represented numerous debtors seeking chapter 13 relief in the Bankruptcy Court for the Southern District of New York. In at least 16 of those cases, Appellant's chapter 13 plans stated that, for mortgage payments where the validity of the mortgage was disputed, payments would not be made to the chapter 13 trustee or the lender until the validity of the mortgage was decided. (*Id.* at A333-A335). The post-petition mortgage payments would instead be made to Appellant and held in escrow by Appellant or her firm. (*Id.*). Under the terms of these chapter 13 plans, if the validity of the mortgage was confirmed, the secured lender would thereafter receive the escrowed payments. (*Id.*).

II.     The Bankruptcy Court's June 17, 2021 Order to Show Cause

It came to the Bankruptcy Court's attention, in June 2021, that funds were not being escrowed in numerous cases as required by the terms of these Chapter 13 plans. Nor were the funds being remitted to the Chapter 13 Trustee for the benefit of creditors or paid directly to secured creditors as required by the Bankruptcy Code. (App. at A027-A033). Accordingly, the Bankruptcy Court issued an Order to Show Cause on June 17, 2021 ("OSC") in these cases, directing Appellant to show cause as to: (1) whether misrepresentations were made by Appellant regarding the escrowing of post-petition mortgage payments, and if so, why Appellant should not be sanctioned for such misrepresentations; (2) whether all post-petition mortgage payments purportedly held in escrow by Appellant in the cases at issue should not immediately be turned over to the applicable

---

[2] Citations to "App. at A___" are to the Appendix of Appellee William K. Harrington, United States Trustee. (Doc. 18-1; Doc. 18-2; Doc. 18-3).

secured creditors or the Chapter 13 Trustee; and (3) why the Chapter 13 Plans in the cases should not immediately be amended to require that all post-petition mortgage payments be paid either directly to the secured creditors or to the Chapter 13 Trustee. (*Id.* at A031-032).

The Bankruptcy Court also required Appellant to submit a comprehensive list of all her pending Chapter 13 cases filed in White Plains, Poughkeepsie, and Manhattan in which the Chapter 13 plan provided for the escrow of post-petition mortgage payments. (*Id.* at A037). On August 4, 2021, Appellant filed a list containing a single case. (*Id.* at A040). Appellant responded to the Order to Show Cause on September 20, 2021, asserting that (1) that "no misrepresentation was ever knowingly made to the Court by the undersigned or person under her direction or control at any time;" (2) that the escrowing practices in question had been continued "with the knowledge, consent and actual direction" of the previous bankruptcy judge; and (3) "ethical considerations precluded her from volunteering the fact that a particular Debtor/Client had not made certain payments to" her. (*Id.* at A053).

The Bankruptcy Court held its first hearing on the OSC on October 20, 2021 during which it banned the practice of escrowing post-petition mortgage payments and issued four directives to Appellant with respect to the OSC. (*Id.* at A073). The Bankruptcy Court: (i) requested confirmation in writing that the escrow practice in question had ceased; (ii) directed Appellant to report whether there had been other cases in which these escrow provisions were included in the Chapter 13 plans; (iii) asked that Appellant consult with the U.S. Trustee and Chapter 13 Trustee to provide a proposal as to what should happen to the escrowed funds; and (iv) directed Appellant to provide details about the escrow accounts that were set up by Appellant. (*Id.* at A078-A089). As to the fourth directive, the United States Trustee discussed its desire for primary source bank account documents, as opposed to summaries, and the Bankruptcy Court stressed the importance

of providing statements and financial records associated with the account that speak for themselves. (*Id.* at A106-A108). Despite the Bankruptcy Court's instruction, Appellant did not provide financial records or bank account statements, resulting in the Bankruptcy Court entering an order directing Appellant to submit the bank records for *in camera* review. (*Id.* at A110-A115).

Appellant made an *in camera* production of the escrow account statements in March 2022 and the Bankruptcy Court held a hearing on the OSC on March 24, 2022. (App. at A116-A149). The U.S. Trustee, at the hearing, raised a concern about a shortfall in Appellant's account lasting from June 17, 2021 through early August 2021 in the amount of approximately $24,000. (*Id.* at A121-A122). Appellant acknowledged that there was indeed a shortfall—one that began two years earlier than the U.S. Trustee had suggested, lasting from June 5, 2019 to August 2021—and clarified that the shortfall during that longer period was for $21,300.[3] (*Id.* at A134). Appellant further stated that the shortfall occurred due to a "bookkeeping error" which was remediated with a deposit in August 2021. (*Id.*). The Bankruptcy Court then directed the parties to brief their views on the merits of the OSC. (*Id.*). Appellant sought to seal the briefing on the OSC. (*Id.* at A142). The Bankruptcy Court ordered the parties to file their briefs under seal and directed the parties to brief whether to maintain the pleadings under seal. (*Id.* at A352). The parties all filed sealed briefs on the merits of the Order to Show Cause. (*Id* at A392-A436; A469-A481, A150-A170). Appellees moved to unseal those briefs, which Appellant opposed. (*Id.* at A437-A468; A482-A485, A171-

---

[3] Appellant does not challenge the shorter two-month shortfall of approximately $24,000 identified by the U.S. Trustee. (Order at n.32). On May 31, 2021, Appellant's escrow account held a total balance $77,977.40. (*Id.*). Appellant withdrew $10,000 from the account on June 3, 2021, resulting in a shortfall of funds held in escrow in the amount of $4,533.92. (*Id.*). By June 30, 2021, the shortfall in the account had increased to $24,440. (*Id.*). On that date, the account's balance was $48,071.17, but the amount of post-petition mortgage payments deposited by the Debtors was still $72,511.32. (*Id.*). As of July 31, 2021, the Account still had a shortfall of $24,440.15. (*Id.*). On August 11, 2021, the shortfall ended when Ms. Tirelli deposited $30,000 of funds into the Account. (*Id.*).

A182). The Bankruptcy Court held argument on the Order to Show Cause and the United States Trustee's motion to unseal on September 14, 2022. (*Id.* at A490-A590).

III.    The Bankruptcy Court's April 28, 2023 Memorandum Decision & Order

The Bankruptcy Court's April 28, 2023 Order covered both Appellant's handling of escrowed funds and the motion to seal the briefing on the OSC. The Bankruptcy Court, with respect to Appellee's motion to unseal, concluded that none of the information regarding the Bankruptcy Court's OSC should be sealed. (Order at 26-41). Section 107(b)(2) of the Bankruptcy Code provides that the Bankruptcy Court may seal information in order to "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b). The Bankruptcy Court found that the documents at issue here were neither defamatory nor scandalous because the documents simply contained recitation of facts and legal arguments. (OSC at 26-41). Specifically, the Bankruptcy Court concluded that the documents were not scandalous under Section 107(b)(2) because "the material contained in the pleadings is a straightforward recitation of the facts underlying the actions taken by Ms. Tirelli" and found that none of the material was "grossly offensive" in nature. (Order at 30-31). The Bankruptcy Court further concluded that the material Appellant sought to seal was not defamatory under Section 107(b)(2) because it "was derived from prior pleadings and hearing transcripts that are already on the public record of the Debtors' cases" and thus the Bankruptcy Court concluded that it "lacked the authority to seal information derived from public documents." (*Id.* at 34-35 (citing *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 565 (Bankr. S.D.N.Y. 2007)). Accordingly, the Bankruptcy Court granted Appellee's motion to unseal. (Order at 41).

The Bankruptcy Court concluded, with respect to Appellant's handling of escrowed funds, that "Ms. Tirelli failed to comply with her obligations for the IOLTA account where the escrowed

funds were held in these cases." (Order at 43). The Bankruptcy Court held that Appellant violated New York and Connecticut ethical rules by: (1) having a shortfall in the escrow account from June 2019 until August 2021; (2) failing to conduct a reconciliation of the escrow account for two years; and (3) depositing non-client funds into the escrow account at least two times, suggesting the improper comingling of funds. (*Id.* at 47-48). The Bankruptcy Court concluded that Appellant lacked candor with the court because "[i]t is undisputed that funds were not escrowed in six of the cases identified in the OSC—despite representations in the Chapter 13 plans—and that there were shortfalls in the escrowed funds in another four cases." (*Id.* at 50-51).

The Bankruptcy Court referred Appellant to the Committee on Grievances for the United States District Court, S.D.N.Y. for any further investigation that the Committee might deem appropriate and for the imposition of any appropriate punishment. (*Id.* at 62). The Bankruptcy Court required, pending the conclusion of disciplinary proceedings, Appellant to provide a copy of the Order to any judge presiding over any case where Appellant is acting as counsel to a bankruptcy debtor. (*Id.*). The Bankruptcy Court reasoned that "[s]uch a step will ensure that the judge in any existing or future case is put on notice of the issues that arose in these cases so that the judge may take whatever protective action they deem appropriate, including but not limited to imposing requirements regarding the reporting and reconciliation of escrow balances." (*Id.*).

## **STANDARD OF REVIEW**

"The Bankruptcy Court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*." *In re Markus*, 78 F.4th 554, 563 (2d Cir. 2023). The clear error standard permits the Court to set aside the Bankruptcy Court's factual findings only if the Court is "left with the definite and firm conviction that a mistake has been committed." *Sacerdote v. New York Univ.*, 9 F.4th 95, 119 (2d Cir. 2021) (citing *United States v. U.S. Gypsum*, 333 U.S. 364, 396

(1948)). "[C]lear error review mandates that [the Court] defer to the [Bankruptcy Court's] factual findings, particularly those involving credibility determinations." *Id.* (citing *Phx. Glob. Ventures, LLC v. Phx. Hotel Assocs., Ltd.*, 422 F.3d 72, 76 (2d Cir. 2005)). A *de novo* review on the other hand allows the Court "to decide the issue as if no decision had been previously rendered. No deference is given to the Bankruptcy Court's decision." *In re Reilly*, 245 B.R. 768, 772 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000).

"By contrast, a Bankruptcy Court's award of sanctions is reviewed for abuse of discretion. If a Bankruptcy Court lacks the authority to impose a particular sanction, the imposition of such a sanction constitutes an error of law, which is necessarily an abuse of discretion, and, therefore, demands reversal." *In re Markus*, 78 F.4th at 563. "The Bankruptcy Court 'necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010) (quoting *In re Highgate Equities, Ltd.*, 279 F.3d 148, 151 (2d Cir. 2002)).

## DISCUSSION

Appellant raises three grounds for appeal: (1) the Bankruptcy Court erred by failing to seal the proceedings; (2) the Bankruptcy Court erred by holding that Appellant committed misconduct by lacking candor with the Court; and (3) the Bankruptcy Court erred in crafting its sanction. The Court addresses each of these arguments *seriatim*.

### I.   Appellant's Request to Seal

"[A] paper filed in a case under [the Bankruptcy Code] and the dockets of a Bankruptcy Court are public records and open to examination by an entity at reasonable times without charge" unless specifically enumerated circumstances apply. 11 U.S.C. § 107(a). The Bankruptcy Code provides that the Bankruptcy Court may seal information in order to "protect a person with respect

to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2). "Since the sealing of records runs contrary to the strong policy of public access, only clear evidence of impropriety can overcome the presumption and justify protection under § 107(b)(2)." *Togut v. Deutsche Bank AG*, 492 B.R. 162, 174 (Bankr. S.D.N.Y. 2013). The Bankruptcy Court concluded that Appellant failed to meet her burden of showing by clear evidence that the documents sought to be sealed were either scandalous or defamatory. Appellant argues that the Bankruptcy Court erred because the documents at issue posed an "undue risk to [Appellant's] professional reputation." (App. Br. at 44).

Courts in this Circuit have regularly held that mere embarrassment or reputational injury are not sufficient reasons to seal a document. *See United States ex rel. Eng. v. Parsons-Hietikko*, No. 19-CV-07705, 2023 WL 1069677, at *1 (S.D.N.Y. Jan. 27, 2023) ("the fear of the loss of professional opportunities" and "the mere possibility of future adverse impact on a party's reputation" is insufficient to "overcome the presumption of access to judicial documents"); *Bronx Conservatory of Music, Inc. v. Kwoka*, No. 21-CV-01732, 2021 WL 2850632 (S.D.N.Y. July 8, 2021) ("generalized concerns of adverse publicity and reputational injury . . . cannot justify an order sealing a core judicial document"). Appellant's contemplated injury—that the documents being available to the public could pose a risk to her professional reputation—is insufficient to overcome the presumption of access to judicial documents. The Bankruptcy Court correctly concluded that the materials were neither scandalous nor defamatory under Section 107(b)(2) of the Bankruptcy Code because they were merely a straightforward and truthful recitation of facts and were derived from the public record. (*See* Order at 34-35). Appellant's arguments that the documents should be sealed because documents filed before Committee on Grievances for the United States District Court, S.D.N.Y. are confidential is similarly unavailing. As the Bankruptcy

Court correctly noted, the underlying OSC proceedings were "not [before] an attorney disciplinary committee" but rather a matter "that relates to public proceedings." (App. at A144). The OSC proceedings were carried out as part of the Bankruptcy Court's "safeguarding [of] the chapter 13 process" making the rules governing documents submitted to the Committee on Grievances inapplicable. Appellant has failed to establish that the papers she seeks to seal are either defamatory or scandalous.

Accordingly, the Court affirms the Order with respect to the Bankruptcy Court's granting of Appellee's motion to unseal the OSC filings.

II.    Appellant's Duty of Candor

The Bankruptcy Court concluded that Appellant's "representations to the Court constituted misconduct," and concluded that Appellant "lacked candor with the Court in her repeated representations to the Court about the escrowing of proceeds in these cases." (Order at 137). Appellant argues that the Bankruptcy Court "incorrectly held that Appellant committed ethical misconduct by making misrepresentations to the [Bankruptcy Court] or otherwise lacked candor in her role as counsel to the subject Debtors." (App. Br. at 33). Appellant further notes that she "does not appeal against the part of the subject Order that referred her to further proceedings concerning accounting issues in her escrow account." (*Id.*).

As an attorney admitted to practice in Connecticut and before this Court, Appellant had an obligation to comply with both Connecticut and New York ethical rules. *See* Local Civil Rule 1.3(a)(6)(F), (a)(7). Both states have Rule 8.4, which states that lawyers may not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation" nor "engage in conduct that is prejudicial to the administration of justice." N.Y. Rules of Prof'l Conduct R. 8.4(c)-(d); *see also*

Conn. Rules of Prof'l Conduct R. 8.4(3)-(4).[4] From Rule 8.4 and others, courts have found "an ethical duty of candor in all of their dealings with the Court." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018) ("In order for the Court to conduct proceedings properly, it must be able to rely upon representations made on the record by attorneys licensed to practice before it."). This duty of candor includes an obligation to correct material misstatements made to the court. *See Google LLC v. Starovikov*, No. 21-CV-10260, 2022 WL 16948296, at *13 (S.D.N.Y. Nov. 15, 2022).

The chapter 13 plans at issue here, drafted and filed by Appellant, altered the standard provisions of a chapter 13 plan by having the debtor not pay post-petition mortgage funds to the secured creditor directly or through the chapter 13 trustee. (Order at 53). Appellant held herself out as the Debtors' escrow agent to hold post-petition monthly mortgage payments where Appellant sought to challenge the validity of the secured creditors' lien on the property. (*Id.* at 5-6). These non-standard escrow provisions created a benefit to the Debtors by "discourag[ing] secured creditors from seeking relief under Section 362(d)(1)." (*Id.* at 54). As the Bankruptcy Court correctly noted in its well-reasoned decision, "[a]s a seasoned practitioner, [Appellant] was also cognizant that, as setting herself up as the escrow agent, she was putting herself in the unique position of being the ***only party*** who would know if such payments were not being escrowed as was being represented in the plans filed in the Debtors' cases." (Order at 55 (emphasis added)). Having created this atypical situation where Appellant was the only one who could monitor the Debtors' compliance with the chapter 13 plan's escrow provisions, she imposed upon herself a

---

[4] In addition to Rule 8.4, the Bankruptcy Court concluded that Appellant's conduct also violated Connecticut Professional Rule 1.15 which requires attorneys to conduct "at least quarterly reconciliations of client trust accounts maintained by the lawyer" and that trust account funds "shall be kept in a separate account maintained in the state where the lawyer's office is situated." (Order at 48 (citing Conn. Rules of Prof'l Conduct R. 1.15(b); 1.15(j)(9))).

duty of candor requiring her to keep the Bankruptcy Court fully and accurately informed of the status of the post-petition mortgage payments and of the escrow account. Appellant failed to satisfy that requirement here.

The Bankruptcy Court found that "[i]t is undisputed that funds were not escrowed in six of the cases identified in the OSC—despite representations in the Chapter 13 plans—and that there were shortfalls in the escrowed funds in another four cases." (Order at 50-51). Appellant's failure to disclose the shortfall in the escrow account alone is sufficient to support the Bankruptcy Court's conclusion that her representations to the Court lacked candor. Appellant does not dispute that there was a shortfall in her escrow account of $21,300 for two years that was not disclosed to the Court.[5] Appellant seeks to excuse the shortfall by characterizing it as a "human error" resulting from an "inadvertent oversight." (App. Br. at 38). Appellant misapprehends the scope of the duty of candor. Appellant, as an officer of the court, was obligated to do more than not lie to the Court. As the bankruptcy correctly court noted, "[c]andor is not the state of simply not lying; candor is the quality of being open and honest in expression." (Order at 59). Appellant—during an August 28, 2019 status conference in *In re Akerib*, No. 19-22276—told the Bankruptcy Court that the Debtor's "money is safe. It is in escrow. I can certainly give the trustee an accounting." (App. at A690). Appellant's representation to the Bankruptcy Court was inaccurate because at the time the

---

[5] The very existence of the escrow account shortfall took significant efforts from the U.S. Trustee and bankruptcy court to uncover. The U.S. Trustee requested at the October 20, 2021 hearing that Appellant produce primary source documents regarding her escrow accounts such as "financial records associated with that account that speak for themselves and give an unvarnished accounting of what they are." (App. at A107). The bankruptcy court directed the parties to meet and confer so that the primary source documents could be produced. (*Id.*). Appellant failed to produce the requested primary source documents, resulting in the bankruptcy court entering an Order on February 23, 2022 directing the *in camera* production of the documents. (*Id.* at A110-A115). Even after producing the primary source documents in March 2022—more than four months after the U.S. Trustee initially requested them—Appellant was not forthcoming about the shortfall. Instead, the U.S. Trustee conducted an analysis of the primary source documents and reported their findings to the bankruptcy court at the March 24, 2022 hearing. (App. at A121-123). It was only at that point that Appellant came clean about the shortfall. (*Id.* at A134-A135).

representation was made, there was a shortfall in Appellant's escrow account. Appellant violated her duty of candor to the Bankruptcy Court by having a shortfall in her escrow account, failing to conduct a reconciliation of that account for nearly two years, and then misrepresenting that the Debtors' funds in that account were safe and that an accounting would reflect that.

In any event, Appellant also lacked candor with respect to her statements to the Bankruptcy Court regarding post-petition mortgage payments that were not escrowed despite the chapter 13 plan's provision stating that they would be. Appellant argues that she "consistently informed the [Bankruptcy Court] and interested parties, on the record, the relevant facts concerning cases in which the Debtors did not remit payments to escrow." (Reply at 5). This argument similarly fails. In at least one case, *In re Occhipinti*, No. 18-BK-22690, Appellant represented that the debtor was paying post-petition mortgage payments to her to hold in escrow, but the debtor did not actually deliver any such payments to Appellant. Appellant does not argue that she ever corrected this misrepresentation, either orally on the record or through any written filing, providing an additional basis for the Bankruptcy Court's conclusion that Appellant violated her duty of candor. In each of the chapter 13 plans with these non-standard escrow provisions, Debtor had an ongoing duty to amend the plans to accurately reflect the state of the post-petition mortgage payments. It was not, as Appellant suggests, the Bankruptcy Court's obligation to "request that Appellant modify her handling of these issues." (Reply at 7). Appellant, not the Bankruptcy Court, was the only person who knew the exact status of the post-petition mortgage payments and of the escrow account. Appellant therefore had the affirmative duty to monitor those post-petition mortgage payments and to revise any relevant representations to the Bankruptcy Court. Simply put, Appellant violated her duty of candor by failing to give the Bankruptcy Court a full and accurate reporting of the post-petition mortgage payments and of her escrow account.

Accordingly, the Court affirms the Order with respect to the Bankruptcy Court's conclusion that Appellant lacked candor with the Bankruptcy Court in her representations about the escrowing of proceeds.

### III.    The Bankruptcy Court's Sanction

Lastly, Appellant argues that the Bankruptcy Court erred by directing that Appellant to provide a copy of the Order to any Judge before whom Appellant appears before as bankruptcy counsel pending conclusion of proceedings before the Committee on Grievances. (App. Br. at 10). The decision to "impose sanctions is uniquely within the province of a Bankruptcy Court." *In re Plumeri*, 434 B.R. 315, 327 (S.D.N.Y. 2010). The appellate court nevertheless needs to ensure that any such decision is made with restraint. *In re Kalikow*, 602 F.3d at 91; *see also In Re Highgate Equities, Ltd.*, 279 F.3d at 152. As such, a Bankruptcy Court award of sanctions will not be set aside by an appellate court in the absence of an abuse of discretion. As a temporary measure, and until the Grievance Committee reaches a decision, the Bankruptcy Court's election of remedies was not an abuse of discretion. Courts can and do require providing a copy of an opinion to other courts. *See, e.g., MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 994 F. Supp. 447, 448 (S.D.N.Y. 1997), *aff'd*, 138 F.3d 33 (2d Cir. 1998).[6] The Bankruptcy Court did not abuse its discretion in crafting this temporary remedy, which seeks to preserve the integrity of any chapter 13 cases in which Appellant may participate pending the outcome of the Grievance Committee's proceedings.[7]

---

[6] Appellant's attempts to distinguish *MacDraw* are unavailing. That *MacDraw* concerned different misconduct than that at issue here and is not relevant. Both in *MacDraw* and here, the courts exercised their discretion in crafting a remedy in response to misconduct which required the offending party to provide a copy of the subject order to other judges before whom the attorney appeared.

[7] Appellant's concern regarding filing the Order "on unrelated dockets (that are often already overburdened) without context or apparent basis" is misplaced. (App. Br. at 11). The Order simply directs Appellant to "provide a copy" of the Order to the relevant Judges before whom she appears, not file a copy to any public

Accordingly, the Court affirms the Order with respect to the Bankruptcy Court's directive that Appellant provide a copy of the Order to any Judge before whom Appellant appears before as bankruptcy counsel pending conclusion of proceedings before the Committee on Grievances.

## **CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's Order is AFFIRMED.

**SO ORDERED.**

Dated:    White Plains, New York
          November 22, 2023

_____
PHILIP M. HALPERN
United States District Judge

---

dockets. (Order at 62). This directive can be accomplished simply by providing a copy of the Order to the relevant chambers.